UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**GLORIA LEE MILLER,**

    **Plaintiff,**

v.        CIVIL ACTION 2:15-cv-06041

**CAROLYN W. COLVIN,**

**Acting Commissioner of Social Security,**

    **Defendant.**

## M E M O R A N D U M   O P I N I O N

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 14) and Brief in Support of Defendant's Decision (ECF No. 15). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits (DIB) under Title XVI of the Social Security Act. Both parties have consented to a decision by the United States Magistrate Judge.

### Background

On May 18, 2011, Gloria Lee Miller (Claimant) applied for Social Security Disability Insurance Benefits (DIB) alleging disability beginning on June 10, 2008. On October 18, 2011, the claim was denied initially and again upon reconsideration on January 27, 2012. Claimant filed a written request for hearing on March 7, 2012. Claimant appeared in person and testified at a hearing held in Charleston, West Virginia, on February 19, 2013. In the Decision dated January 22, 2014, the ALJ determined that based on the application for a period of disability and disability

1

insurance benefits, Claimant was not disabled under sections 216(i) and 223 (d) of the Social Security Act. On February 3, 2014, Claimant filed a Request for Review of Hearing Decision of the ALJ. On March 13, 2015, the Appeals Council denied Claimant's request for review. Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir.

1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your

3

>functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>    (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none"or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusions reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the amended alleged onset date of April 5, 2011, and meets the insured status requirements of the Social Security Act through December 31, 2013 (Tr. at 16). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of degenerative disc disease of the cervical and lumbar spines; hypertension; osteoarthritis; fibromyalgia; headaches; depression; anxiety; pain disorder and borderline intellectual functioning. (*Id*.) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 20). The ALJ then found that Claimant has a residual functional capacity to perform full work at the unskilled light exertional level as furniture rental clerk, shipment weigher and bakery goods inspector" (Tr. at 30). At the hearing the Vocational Expert (VE) testified that such jobs exist in the national economy. On this basis, benefits were denied. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on November 11, 1966. Claimant last completed the eighth grade (Tr. at 53). Claimant has taken the GED test four or five times but has not passed it (Tr. at 43). Claimant is married (Tr. at 60). She talks on the phone with her daughter who lives 2 hours away. (*Id.*) Claimant does not like to drive (Tr. at 61).

### Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ failed to accord adequate weight to the opinions of Laberta Salamacha, M.A., and Kara Gettman-Hughes, M.A. (ECF No. 14). Claimant argues that the ALJ failed to consider all of the Claimant's limitations in the RFC and failed to conduct a proper function-by-function analysis in assessing the Claimant's RFC. Claimant asserts that the ALJ failed to follow the standard set forth in SSR 96-7p in assessing the Claimant's credibility, and she failed to consider all of Claimant's limitations in the RFC. Lastly, Claimant asserts that the ALJ failed to follow the "slight abnormality" standard in finding the Claimant's diabetes and diabetic neuropathy to be non-severe.

Defendant asserts that the ALJ was permitted to discount certain outlier findings of psychological consultants, given the weight of evidence in the record (ECF No. 15). Defendant avers that the ALJ was permitted to find Claimant capable of performing a reduced range of light work, which largely mirrored the findings of an independent examining physician and was otherwise consistent with substantial evidence in the record. Defendant asserts that the ALJ was permitted to find that Claimant's reported headache pain was not disabling, given treatment records consistently describing her as "well appearing" and in "no distress," and evidence of conservative treatment that helped her symptoms. Lastly, Defendant asserts that the ALJ appropriately accounted for Claimant's recent diagnosis of neuropathy by limiting Claimant sharply in standing and walking, findings that were in close accord with the recommendations of an independent examining physician.

### Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Residual Functional Capacity

A RFC represents the most that an individual can do despite his or her limitations or restrictions. *See Social* Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." *Id.*

Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014). This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s). *Id.* In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence

in the case record were considered and resolved." *Id.*

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that the RFC may "be expressed in terms of the exertional levels of work." *Id.* The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Id.* The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." *Id.* Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id* (*Citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)); *see also*, *Ashby v. Colvin*, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

## Discussion

The ALJ stated that his residual functional capacity (RFC) assessment of Claimant was based upon "the entire record" (Tr. at 23). The ALJ's decision also contained the following boilerplate language:

> In making this [RFC] finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and

> other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p (Tr. at 23).

Later in the decision, the ALJ discusses the weight he gave medical opinions in the record. When discussing the opinion of consultative examiner Kip Beard, M.D., the ALJ held that "Dr. Beard's opinion is given some weight to the extent it is consistent with the above residual functional capacity" (Tr. at 28). The ALJ's description of Dr. Beard's findings includes the following:

> Consultative examiner D. Beard next concluded in April 2013 the claimant was limited to the equivalent of light exertion with similar postural and environmental restrictions… However, Dr. Beard added restrictions to the periods the claimant could sit, stand and walk, including a limitation to sitting up to 4 hours in an 8-hour workday. He also added restrictions of no more than frequent right hand use, frequent use of foot controls and frequent use of machinery… This opinion is not given more weight because some of the restrictions, such as limited use of foot controls, are not fully supported by the record.

Additionally, the ALJ gave State agency consulting psychologist the following weight:

> Consulting psychologist [Kara Gettman-Hughs, M.A.], completed an opinion of the claimant's psychological functioning in March 2013 (Exhibit B42F). Ms. Hughes determined the claimant had "marked" limitations in making complex judgments and responding to workplace changes. Additional "moderate" limitations in areas such as handling detailed instructions and interacting with others were also noted. This opinion is given some weight to the extent it supports finding the claimant unable to perform complex or detailed instructions, as identified in the established residual functional capacity (Tr. at 28).

However, when discussing Ms. Hughes' findings in her March 2013 evaluation the ALJ did not explain why the ALJ did not adopt her finding of marked limitations when determining Claimant's RFC.

When an ALJ evaluates a claimant's RFC, a medical assessment of the claimant's remaining capabilities to work, he considers all of the relevant medical and other evidence. See 20 C.F.R. § 404.1513; SSR 96-8p. In cases in which symptoms, such as pain, are alleged, the RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations. Additionally, the RFC assessment must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work. Richard C. Ruskell, *Social Security Disability Claims Handbook* (2015 Edition), 214 n.5.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts… and nonmedical evidence." Courts have held that an ALJ failed to follow SSR 96-8p "by merely summarizing the medical evidence. The Ruling requires a narrative discussion of the RFC to show how the evidence supports the ALJ's conclusion." *Munday v. Astrue*, 535 F.Supp. 2d 1189, 129 Soc. Sec. Rep. Serv. 726 (D. Kan. 2007). The RFC assists the ALJ in determining whether the claimant retains enough vocational capacity to return to work. When calculating the RFC, the ALJ must take all factors into account and explain his conclusions with substantial evidence. *See Kotofski v. Astrue*, 157 Soc. Sec. Rep. Serv. 313, 2010 WL 3655541 (D. Md. 2010).

Furthermore, the ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial

11

evidence. The Commissioner is required to include in the text of [his] decision a statement of the reasons for that decision. *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge. . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

In the present matter, the ALJ failed to consider the entire record when conducting her RFC assessment. The ALJ first determined Claimant's RFC, then used that RFC to determine the credibility of consulting medical opinions of Dr. Beard and Ms. Hughes. The credibility of the consulting medical opinions should have been determined before the RFC assessment and considered when establishing Claimant's RFC.

The ALJ stated that Mr. Hughes determined the claimant had "marked" limitations in making complex judgments and responding to workplace changes, however, the ALJ did not explain why he did not adopt Ms. Hughes' finding. The ALJ must resolve any inconsistencies in the evidence as a whole and provide a logical explanation in the RFC assessment. The ALJ's decision lacked the function-by-function assessment of Claimant's limitations and ability to do work-related activities as required by SSR 96-8p and the holding in *Mascio*.

## Conclusion

The undersigned finds that the inadequacies in the ALJ's analysis frustrate meaningful review. The ALJ failed to provide sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence.

Accordingly, the undersigned finds that pursuant to the holding in *Mascio*, the ALJ failed to provide a well-reasoned narrative for her RFC assessment and that she failed to reconcile the inconsistency between the RFC and Ms. Hughes' opinion that Claimant would have marked

limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting.

For the reasons set forth above, by Judgement Order entered this day, Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 14) is **GRANTED** to the extend Claimant seeks remand, the Brief in Support of Judgment on the Pleadings (ECF No. 15) is **DENIED**, the final decision of the Commissioner is **REMANDED** for further proceeding pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from this Court's docket.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

Enter: September 30, 2016.

Dwane L. Tinsley
United States Magistrate Judge